O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK WEN-CHIEH SU and RUBY RUEY SU,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NEW CENTURY INSURANCE SERVICES, INC.; TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY OF AMERICA; THE TRAVELERS COMPANIES, INC., a corporation,<br><br>　　　　　Defendants.<br>_____ | Case No. CV 12-03894 DDP (SSx)<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. 18, 19, 20] AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. 22]**<br><br>[Dkt. 18, 19, 20, 22] |

    Presently before this Court are Plaintiffs' Motion for Summary Judgment and two Motions for Summary Judgment filed by Defendants. Having considered the submissions of the parties and heard oral argument, the Court GRANTS Defendants' Motions and DENIES Plaintiffs' Motion.

**I. Background**

    **A. Factual Background**

    Plaintiffs Jack Wen-Chieh Su and Ruby Ruey Su ("Plaintiffs") own a commercial property located at 928 Canada Ct., City of

Industry, CA 91784 (the "Property"). (Second Amended Complaint ("SAC") ¶ 21.) Plaintiffs purchased an "all-risk" insurance policy on the Property for the period of September 1, 2010 to September 1, 2011 from Defendants Travelers Property Casualty Company of America ("TPCCA") and The Travelers Companies, Inc., ("TCI") (collectively "Defendants"). (Id. ¶ 15.) The policy, number I-680-7403C632-TIL-10, was issued by TPCCA, through TCI. (Id.)

On June 27, 2006, Plaintiffs entered into a lease agreement for the Property with tenant BioAgri Corporation ("BioAgri"). (Id. ¶ 21.) Under the terms of the lease, BioAgri was responsible for the repair and maintenance of the Property. (Id. ¶ 22.) The lease was to end on October 12, 2012. (Id. ¶ 21.) In February 2011, however, BioAgri informed Plaintiffs that it would be moving out of the Property. (Id. ¶ 23.) In March 2011, BioAgri informed Plaintiffs that it would be filing for bankruptcy and would be unable to make the necessary repairs to the Property required under the lease. (Id. ¶ 24.) On March 21, 2011, BioAgri turned possession of the Property over to Plaintiffs. (Id. ¶ 25.)

On March 28, 2011, Plaintiffs' representative Tony Su inspected the Property and discovered the following damage: (1) a long trench dug into the floor; (2) openings in the roof, which allowed water to enter the building, causing extensive water damage; (3) three shower stalls installed in the lobby area; (4) a raised concrete pad in the parking lot; (5) unsanitary conditions and/or bio-hazardous material due to leftover chicken droppings; and (6) garbage, materials, and equipment left behind in the building. (Id. ¶ 26.) Plaintiffs submitted a claim to Defendants regarding the damage; Defendants determined that the none of the

2

damage was covered under the policy. (Id. ¶¶ 27-32.) The only damage still at issue in this action is the water damage to the interior of the building, which was caused by the openings in the roof that were not properly sealed when the climate control units that BioAgri had installed were later removed.

Plaintiffs originally asserted that all of the damage to the Property was caused by BioAgri. (Id. ¶¶ 28, 32, 34.) Plaintiffs adhered to that position in their sworn interrogatory responses on June 7, 2012. (Lee Decl., Exh. 5, Dkt. 18-2.) However, Plaintiffs now contend that BioAgri did not remove the climate control units from the roof. Plaintiffs claim that an "unidentified contractor" removed the units because BioAgri told the contractor that he could take them as payment for work he had previously performed for BioAgri. (Chu Decl. ¶ 6, Dkt. 22-5.)

**B. Relevant Terms of the Insurance Policy**

Plaintiffs' policy is an "all-risk" policy, which means that any loss that is not specifically excluded is a covered loss. The policy contains a limitation regarding damage to the interior of the structure caused by water entering from outside, which states:

> a. We will not pay for any loss of or damage to:
>
>   (1) the "interior of any building or structure" or to personal property in the building or structure, caused by rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:
>
>     (a) The building or structure first sustains damages by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters.

3

1  Two relevant covered causes of loss are vandalism and theft. Theft
2  is defined as "any act of stealing."
3      The policy also contains an "entrustment exclusion," which
4  states:
5           1. We will not pay for loss or damage caused directly or
6              indirectly by any of the following...
7              h. Dishonest or criminal acts by ... anyone to whom
8              you entrust the property for any purpose.

## II. Legal Standard

A motion for summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. See id. If the moving party meets its initial burden, the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that

4

there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).

It is not the Court's task "to scour the record in search of a genuine issue of triable fact." <u>Keenan v. Allan</u>, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel have an obligation to lay out their support clearly. <u>Carmen v. San Francisco Sch. Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001). The Court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." <u>Id.</u>

**III. Discussion**

**A. Unopposed Damage Claims**

Plaintiffs do not oppose Defendants' Motions for Summary Judgment as to the following damages sustained to their property: (i) the floor trench; (ii) three shower stalls in the lobby area; (iii) the raised concrete pad; and (iv) the unsanitary conditions resulting from leftover chicken droppings. Therefore, Defendants' Motions are GRANTED as to those unopposed damage claims.

**B. The Climate Control Units and Interior Water Damage**

The limitation in the policy regarding rain damage to the interior of the building means that in order for the water damage caused by rain entering through improperly sealed openings in the roof to be covered, the damage to the Property that allowed the rain to enter the building must be a covered loss. The removal of the climate control units is the event that allowed the rain to enter and damage the building; therefore, in order for the policy to cover the damage, the removal of the units must be a covered loss.

5

### C. Simon Chu's Declaration[1]

Plaintiffs now assert that the climate control units on the ceiling were removed not by BioAgri, but by an "unidentified contractor." The only evidence Plaintiffs offer to support this assertion is a declaration by Simon Chu, the broker for Plaintiffs for the lease of the Property to BioAgri. Chu asserts in his declaration that in March 2011, he "went to the property to check on the progress of BioAgri's removal of chicken cages from the property." (Chu Decl. ¶ 4, Dkt. 22-5.) While there, Chu claims that he "spoke with a contractor who was on the site removing the cages," and that the contractor told Chu that "he had removed the climate control units from the roof of the property because BioAgri told him he could take the units as part of the payment for his work." (Id. ¶¶ 5-6.)

Chu's report of the statement by the unidentified contractor is hearsay. The contractor's statement that BioAgri told him he could remove the units is also hearsay. "[A]n affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial." Patterson v. County of Oneida, N.Y., 375 F.3d 206, 219 (2d Cir. 2004). "[H]earsay evidence in [Rule 56] affidavits is entitled to no weight." Scosche Industries, Inc. v. Visor Gear Inc., 121 F.3d 675, 681 (Fed. Cir. 1997) (quoting Pan-Islamic Trade Corp. v. Exxon

---

[1] Simon Chu actually submitted two declarations, one in support of Plaintiffs' Motion and one in opposition to Defendants' Motion. One declaration simply states that the contractor told Chu that he had removed the units as payment for the work he did for BioAgri. (Chu Decl. ¶ 6, Dkt. 36-5.) The other includes the added detail that the contractor had been told by BioAgri that he could remove the units as payment. (Chu Decl. ¶ 6, Dkt. 22-5.)

6

Corp., 632 F.2d 539, 556 (5th Cir. 1980)). This is because affidavits must be "based on personal knowledge." Cormier v. Pennzoil Exploration & Production Co., 969 F.2d 1559, 1561 (5th Cir. 1992). Therefore, the Court finds that Chu's declaration is inadmissible hearsay evidence.[2] Without Chu's declaration, Plaintiffs have no evidence to contradict or call into question their original assertion that BioAgri removed the units.

**D. The Entrustment Exclusion**

With Chu's declaration excluded from the evidentiary record, the facts, even when taken in the light most favorable to Plaintiffs, indicate that BioAgri removed the climate control units. Without Chu's declaration, there is no evidence to contradict Plaintiffs' complaint and interrogatory responses, which indicate that BioAgri removed the units. Therefore, there is no factual dispute, looking only at the admissible evidence, as to who removed the units.

Plaintiffs base their entire argument, both in opposition to TPCCA's motion and in support of their own motion, on the fact that the removal of the units constituted vandalism or theft.[3] Assuming

---

[2] Plaintiffs assert that the statements in Chu's declaration, though hearsay, should nevertheless be admitted under exceptions to the hearsay rule. The Court is not persuaded that any hearsay exceptions apply.

[3] In the likely event that the acts involved here do not actually constitute vandalism or theft, Plaintiffs' claims are excluded under the "acts or decisions" or "faulty workmanship" clauses of the contract, as BioAgri's (or the contractor's) removal of the units would have been, at most, a negligent act. However, as Plaintiffs have not claimed coverage under a negligence theory, but instead rely solely on the argument that the removal of the units constituted vandalism or theft, the Court does not analyze this issue, since by not opposing Defendants' argument that these clauses would bar coverage, Plaintiffs concede that they would.

7

without deciding that BioAgri's removal of the climate control units constitutes either vandalism or theft, BioAgri's action falls within the "entrustment exclusion" of the policy. This exclusion has been found to be unambiguous as a matter of law and specifically applicable to lessees. Atlas Assurance Co. V. McCombs Corp., 146 Cal. App. 3d 135, 144 (1983); Vision Financial Group v. Midwest Family Mutual Ins. Co., 355 F.3d 640, 643 (7th Cir. 2004).

Vandalism and theft are both criminal acts; therefore, the entrustment exclusion applies to any such acts performed by anyone to whom the property is entrusted. Even if the loss occurs after the entrustment of the property has terminated, the exclusion still applies so long as there is a "causal connection between the act of entrustment and the resulting loss." Bainbridge, Inc. v. Calfarm Ins. Co., 2004 WL 2650892, at *6 (Cal. Ct. App. 2004); see also Plaza 61 v. North River Ins. Co., 446 F. Supp. 1168, 1171 (M.D. Penn. 1978). Therefore, Plaintiffs are precluded from recovering for an act of vandalism or theft committed by BioAgri, to whom they entrusted the Property.[4]

//
//

---

[4] Even if the Court were to admit Chu's declaration into evidence and accept as true the statement that a contractor removed the units and not BioAgri, Plaintiffs would fare no better. According to Chu's declaration, the contractor removed the units "because BioAgri told him he could take the units." (Chu Decl. ¶ 6, Dkt. 22-5.) Therefore, this evidence suggests that BioAgri *authorized* the removal of the climate control units by the contractor. BioAgri, an entity, can only act through persons authorized to act on its behalf, making the contractor's removal of the units at the direction of BioAgri no different from BioAgri's own removal of the units. Therefore, the entrustment exclusion would operate to bar recovery for Plaintiffs even if the Court admitted Chu's statement.

**IV. Conclusion**

For the foregoing reasons, the Court finds that there is no genuine issue of material fact remaining in this case. Based on the admissible evidence, no reasonable jury could conclude that Plaintiffs' losses are covered under the insurance policy; therefore, Defendants have not breached their insurance contract by denying coverage. Summary judgment is GRANTED in favor of Defendants.[5]

IT IS SO ORDERED.

Dated: October 25, 2013

DEAN D. PREGERSON
United States District Judge

---

[5] The Court need not reach the issues raised in TCI's Motion for Summary Judgment regarding their liability as a parent company for the acts of TPCCA.